Good morning, Your Honors. Naomi Spector on behalf of Plaintiff Appellant. I'm going to reserve about five minutes of my time for rebuttal, but I'll keep an eye on it. May it please the Court, this case involves misrepresentations on the labels of defendants' hand sanitizing wipes. Specifically, it involves two prominent false front label representations. First, that the product kills 99.9% of germs, and second, that the products are hypoallergenic. The complaint plausibly alleges that these representations are literally false and misleading to reasonable consumers. In dismissing plaintiff's complaint at the pleading stage, the District Court substituted its own speculation and conjecture for the specific and plausible allegations of the complaint in order to reach factual findings that were directly contrary to the facts pled. This constitutes reversible error. Specifically, the District Court found that reasonable consumers, when they are making purchasing decisions, understand the front label statement, kills 99.99% of germs, to be limited to diseases that are only transmissible by hand and are typically prevented by ensuring one's hands are clean. In doing so, the District Court imputed to reasonable consumers specific scientific knowledge about which germs are used in hand hygiene methods. This is contrary to the facts pled that consumers understand the statement to be true on its face. Second, the District Court found that reasonable consumers understand the hypoallergenic representation to relate to the effect of the product as to suffering no allergic reaction, rather than as pled that the products contain few or no allergenic ingredients. Thus, the District Court qualified the front label statements with language that does not appear anywhere on the product labels and then imputed to plaintiff and reasonable consumers the knowledge of these specific scientific qualifications. If allowed to stand, the District Court's decision will severely curtail California's consumer protection laws because it will convert the reasonable consumer standard, which was designed to be protective of consumers to receive products that are truthfully labeled, into a vehicle for judges to dismiss claims at the pleading stage under a pretext of common sense. This Court should not permit California's consumer protection law to be subverted by a judge's subjective opinion. Instead, it should uphold the longstanding law of this circuit that where, as here, the allegations that consumers are likely to be deceived are plausible, the case should proceed past the motion to dismiss and into discovery. I will discuss... I gather that essentially the thrust of the argument is that the District Court seemed to imply that a reasonable consumer would have some kind of scientific background of some sort. That's right, Your Honor. And there certainly is California law that indicates that a reasonable consumer should not be assumed to have any scientific background. That's also correct. That's the case of Brady v. Bayer Corporation, where the California Court of Appeals found, in the context of one-a-day vitamins, that consumers wouldn't necessarily have scientific knowledge or specialized knowledge. And also the decisions of Colgan and LaVie, also California State Court decisions, that found that consumers are not necessarily sophisticated or aware in the way that judges or courts might be. I take your point about the District Court making factual findings about what a reasonable consumer might think. But that only goes to a point, right? Because our Trader Joe's decision in particular recognizes that there can be situations where a court can look at a plaintiff's allegations about what a reasonable consumer thinks and say, no, that's not reasonable. And that seems odd that, at the pleading stage, we would allow a judgment to be made as a matter of law on what is or isn't reasonable. But Trader Joe's stands for the principle that that can happen sometimes. So I need you to address that case in particular and the idea of why your case doesn't come up to that line. Absolutely. So Moore v. Trader Joe's involved Manuka honey, which the court, the District Court, Ninth Circuit recognized was a niche specialty product. Manuka honey commands a high price point. I think for a very pure Manuka honey product, it costs upwards of $200 and something dollars. The Trader Joe's product at issue in that case was like $13.95. So at the outset, the court drew a threshold distinction between consumers who buy specialty products like Manuka honey and consumers of low-cost everyday goods. And for that proposition, it spoke about Bell, the Seventh Circuit decision involving 100% Parmesan cheese, which it recognized was distinct from the Manuka honey at issue. This case is much like Bell because it involves a low-priced everyday good with a label representation that says $99.99, whereas Bell said 100% Parmesan cheese. And if you look to Bell, the court did find that you couldn't reach a determination on a motion to dismiss as to whether reasonable consumers were likely to be misled by that label statement. So in Moore v. Trader Joe's, there were a couple of sort of extenuating circumstances, including the price point, the fact that the FDA had, there's FDA guidance for Manuka honey, and it says that anything with more than a 50% purity rating can be labeled as 100% Manuka. And so Trader Joe's was actually compliant with the FDA guidance. There was also the UMF rating on the product, which was super low, and I think I mentioned the price point. So there were extenuating circumstances in that case that the court found made it such that a reasonable consumer would not be misled, but the court did specifically contrast it with a case such as this one, like Bell, where that determination can't be made on a motion to dismiss. So what's the daylight between your allegations and what the district court was saying you had to do? Because it seems to me your allegations have narrowed the universe of germs to germs on hands. And that's part of what the district court wanted specified, and it seems to me your allegations address that qualification. So what is the daylight between you and what the district court said? It's a great question. So we, I agree that we did narrow the allegations to germs on hands. The district court made another finding that the product wouldn't, that reasonable consumers wouldn't expect the product to work in cases where you wouldn't use a hand hygiene method in the first place. The thing that's confusing about that is that the allegations and the complaints substantiate that each of the germs discussed would be killed by hand hygiene methods. For example, norovirus, right, something that's referred to as a food, a germ transmitted in a food context, right, it is transmitted by hand, including the hands of food workers, and as the CDC says, is killed by soap and water. So it would meet the district court's qualification. Same with something like cryptosporidium, right, even though it is transmitted through contaminated water, the literature that we cite in the complaint demonstrates that the best way to kill it is by washing hands with soap and water for more than 20 seconds. So I think that the district court got it wrong in two ways. One, under the facts, because the facts do meet what the district court set forth as a standard, but also the district court imputed or charged reasonable consumers with this expert scientific knowledge that is more akin to what judges or lawyers might apply to a label statement than a reasonable consumer. That's a funny line, right, because you have also said a reasonable consumer would expect that this product is going to kill the stated percentage of germs found on hands. So you're also imputing to reasonable consumers some sort of specialized knowledge, right? I mean, I guess it's a little bit, I don't know, I'm just, I'm trying to figure out how much difference there really is between your assertion of what reasonable consumers think versus the district court's. And I guess your response to that would be, well, this is at the pleading stage, so take what we say is true. That's right, and we do provide, you know, some scientific evidentiary support for the And I would also say that the important thing to realize is that in this case, plain if, and by extension reasonable consumers, believe the label statement to be true on its face. So kills 99.99% of germs means kills 99.99% of germs. The litany of cases that dismiss labeling claims at the pleading stage involve a fanciful or unreasonable extrapolation based on label words or images, but don't involve facts like this, where a consumer actually relies on the label statement as written. So when you contrast this with something like Vedetto versus Kellogg Company, where the consumer alleged that Fruit Loop Cereal, F-R-O-O-T, meant that the product contained real nutritious fruit, where there was no such label on the statement. In fact, there were qualifying things that would count against that assumption. The court found that it was appropriate to dismiss. Here, it's a polar opposite situation because plaintiff alleges that the label statements are literally false as written and misleading to reasonable consumers, and the manufacturer should be charged with making accurate label representations. That's what California Consumer Protection Law stands for. It's hard not to note, given these three cases that are all related today, we don't have any hand sanitizer up here on the bench, by the way. But it's hard not to take all these cases together. You must be envious of the... It does have the 99.99 percent. Thank you, Judge Nguyen. In terms of the very thorough argument being presented here, as well as in Meyer versus CDS, we listened to studies. This is a motion to dismiss stage here, in which the case, obviously, all facts are viewed in the light most favorable of the plaintiff. You have had no discovery here, no market studies. You have nothing. And so that's the context of it. And it's hard not to note all the information we received in the earlier argument in the context of both this case and the Robles case that follows here this morning, I think. Yeah, and plaintiffs would argue in this case that we should be permitted to proceed on to discovery in order to develop the factual record and whether reasonable consumers are misled. If the bench doesn't have any further questions at this time, I'll reserve the remainder of my time. All right. Good morning, Your Honors. May it please the court. Can you hear me okay? Thank you. My case court should affirm the district court's dismissal with prejudice. The district court correctly found three times that plaintiff failed to plausibly plead that a reasonable consumer would be misled by KILS 99.9% of germs and hypoallergenic claims contained on the wet ones antibacterial hand wipe. I would first like to address a number of statements made in the previous argument. Counsel, I can just interrupt quickly to get to the core of it. I don't want to interrupt you too quickly, but is hypoallergenic, the representation, is that ever defined anywhere? It's defined in the record. No, I mean, is it defined on the label on the product anywhere? It's not. It's not defined on the label. Okay. I guess the reason I find that a problem in that case is I don't know what hypoallergenic means. I think... And I mean, I guess if I'm a judge up here and I don't understand what it means, I would assume that there are a lot of consumers that don't understand it because I just want to If I'm wrong, tell me, hypoallergenic is not defined anywhere on the label. That is correct. Hypoallergenic is not defined on the label. And so... Tell me, what does it mean? The likelihood to reduce allergic reaction. Okay. It seems like that's an easier thing to put than hypoallergenic. It's certainly a long statement, but what happened here is the court, the district court applied, followed Iqbal, made a plausibility review, which is a context-specific task and looked at the word hypoallergenic. Plaintiff's definition that was pled was also, was certainly also considered, and then the court also considered the Rudd case and the Kelman case, which also talk about hypoallergenic. So to get into that, what the court did was look at the Rudd case, which was a hypoallergenic case that was, the word was not defined. And under those is not a plausible argument. The court then looked at Kelman and the Kelman case had very specific allegations about concentration levels of skin irritants on the back label. So front label, hypoallergenic, and the back label contained certain potential skin irritants. And the theory of deception in the Kelman case was that plaintiff had either, had certainly suffered prior irritations and potentially suffered irritations from the product in the Kelman case, but also had an allegation that these skin irritants in that case were at a threshold above a certain level of concentration. And that plaintiff was clearly relying on something that's not reflected in the record. Here, what our court did is take Rudd and Kelman into consideration and the definitions that were posed in the briefing. And those were likelihood to cause an allergic reaction, relatively unlikely to cause an allergic reaction, to decrease tendency to provoke an allergic reaction, fewer reactions than other cosmetic products, and then plaintiff's definition, designed to reduce or minimize the possibility of an allergic reaction as by containing few or no potentially irritating substances. And taking all that to consideration, the trial court correctly held that this case certainly more like Rudd, because the only allegation here is the presence of potential numerous irritants. And that alone... Some of these arguments that you're making today really seems more appropriate at the class certification or maybe even some re-judgment stage, right, where Twombly and Iqbal is really facial plausibility. You know, it has to be, there's this tension. Ever since Twombly and Iqbal, the court claimed statement of the case and then pleading claims with sufficient specificity to survive the Twombly-Iqbal test. And unlike Judge Bennett mentioned, we've got three cases today, all involving the same or similar claims. The last one survived 12B6 and then the argument was really whether class certification was appropriate. This complaint contains fairly detailed allegations. Why doesn't that survive 12B6 as well? Because Mir is an outlier. And let me address that directly. Mir is a case where the theory of deception is the product kills all germs everywhere, unknown and known, in the universe ever. And that is what got passed the motion to dismiss under the underlying case. And that case is an outlier, because so many judges, Moreno 1, Moreno 2, Souter multiple times, the judge in Pysik, the judge in Cotholdi, Jankowski, each of those judges sized up that theory of deception and it didn't get passed the motion to dismiss stage. So Mir is a very clear, and that question is not before you, whether that theory of deception that kills 99.9% of germs is a plausible theory of deception. When you're looking at here, a hand wipe. Wet ones, antibacterial hand wipe. Kills 99.99% of germs. It is not false on the front. Pursuant to this court's most recent articulation of the reasonable consumer rule, McGinnity holds that if it's not false on the front, you can consider the back label, which says the purpose to decrease bacteria on skin and to degrease dirt. It's a hand wipe, not a liquid. You can't get germs off your hands. In addition to keeping your hands fresh and clean when soap and water are not available. Both Trader Joe's and McGinnity allow the court to- Can I address that? I just want to give you an opportunity to respond on this. The state of California has filed an amicus brief here. They have. Right. And in terms of what it feels is a very negative effect on the consumer protection law under California law. And the state, in its amicus brief, has noted that the label says there has near universal effectiveness. How do you respond to that? Somewhere in the brief, as I recall, the amicus brief, there's a reference to this having near universal effectiveness of some sort. Honestly, I'm not quite exactly sure what the state meant by that question. I focused more on the state encouraging this court to adopt a only rare instances dismissal standard and a no reasonable consumer standard as opposed to likely to mislead a significant portion of the consuming public. And so that was the focus of the amicus brief. Also, in the amicus brief on the hypoallergenic claim, it seemed like the state appeared to agree with Apolyse in that the goal of hypoallergenic is to decrease the likelihood of an allergic impact. And so back to your point, I- Let me follow up on it, if I can. Yeah, sure. As I understand, the district court, this was like the third amended complaint. Is that right? That's correct. And they continually narrowed it to the point that it was narrowed so it just has to do with hand sanitizer and it gets to that third level. And ultimately, it dismissed the amended complaint again and essentially for failing to allege, one, that a reasonable consumer would assume the wipes have no potential allergens, two, that Suter suffered an allergic reaction after using the product, or three, that the product has a higher likelihood of causing a reaction as compared to a similar product on the market. That's essentially how the court ruled, correct? Correct. All right. And my question is, from my review of the briefs here, where is there any case law to support that narrowing to that extent in a 12B6 stage in this case? I think it's the juxtaposition between the Rudd case and the Kelman case and the definitions, the commonly known definitions of hypoallergenic. And the court's rulings on hypoallergenic generally... That's the word that the public should understand, but at least one federal judge does not. Is that right? The likelihood that it will decrease potential irritation. Well, I want to follow up on that. When I come into a case, I try to boil it down. What is the question, right? And here, it seems to me, the question is, have these plaintiffs plausibly alleged that the label here is misleading to a significant portion of the reasonable consuming public? And then they go on to say, this is what the reasonable consuming public would think about what this word means. I mean, we're lawyers. We're used to defining everything and looking to the dictionary and like, this is the absolute truth of a definition. But we're talking about what reasonable consumers define a term to mean. So why can't they just allege what they think that is? And if it's at all plausible, it survives a motion to dismiss. Because it's not plausible. And multiple district courts have held the germ, for example, cryptosporidium parasites. That is something that is not... That's typically... A reasonable consumer would not expect the product to kill something that water and soap cannot, or that can live in water and on bleach disinfected surfaces. So this is a handbook. That answer is so technical. I just cannot imagine your average person in the aisle at a grocery store going through this analysis. I mean, I do not do that. I'm going to think about hand sanitizer entirely differently than I ever have before. Because I've never like drilled down to that level. And so I come back to, at a pleading stage, why don't they get the benefit of the doubt of saying, this is how consumers will think about this. And then they're going to have to prove that that's true through survey evidence or something. And maybe you're right that consumers look at the word hypoallergenic and think that it means what you think it means. But maybe not. And our standard is reasonable consumer, not ultimate dictionary definition. So whether a reasonable consumer... I think the question is certainly fair. Whether a reasonable consumer would take a hand wipe and expect it to kill food-borne illnesses or sexually transmitted diseases or diseases that are transmitted primarily in a health care facility or in a restaurant. I think it's fair that a reasonable consumer would not expect this product to kill something that is sexually transmitted. Of course, that's not how they've defined it, right? They don't say a reasonable consumer comes in and buys hand wipes to address sexually transmitted diseases. They've said a reasonable consumer expects that it's going to address the number of germs that your company says that occur on hands. The plaintiff actually has withdrawn her position as to what a reasonable consumer is. On page five of plaintiff's reply, she essentially says the examples through which she attempted to discuss this case in the framework of a reasonable consumer standard are not applicable to the reasonable consumer standard. Rather, those were demonstrated to show that the word germ is false. And so with where we are, I think multiple courts have looked at this very closely, including Judge Robinson three times. And he watched the pleadings evolve. It wasn't a moving target. The initial complaint alleged all germs everywhere, including something like polio that has been eradicated in the state since 1979. And so we have seen an evolution... I haven't really seen very often. It's unusual, right? In testing facial plausibility, he really delved into and sort of analyzed, for example, the study that was cited to say, well, this study is irrelevant. It's a different product that was used. The study was narrowly tailored to include only one population of eighth grade students. All that is to say a study this narrow, specific, and targeted cannot reasonably be applied to all sanitation products on the market. So he goes a little further in testing facial plausibility than what we commonly see at the 12B6 stage. But I think that interpretation is fair. That's so popular, that study related to a sanitizer, not a wipe. It was not this product, and it was a narrow population. And so I think it's fair for a court to understand that one cannot rely on just conclusory statements like, this is a product that is commonly found on hands. It has to state why. And when it states why, and it attaches exhibits and a basis for that, that completely contradict, right? The CDC advises use bleach to kill norovirus, use bleach to kill cryptosporidium, and then it And so I think it's fair for a judge to test, to test the claims, to figure out whether they are on, they have a plausible basis as opposed to conclusory allegations. And I think that's what happened here. And it's happened in multiple other cases. The underlying decisions in Robles, Pisac, Catholdi-Jankowski, Moreno 1, Moreno 2. Judge Robinson is not alone. The Muir judge, the court in Muir is. Do you have any other further questions? Thank you very much. I submit. Thank you for your time. I want to address a couple of things that came up. Hypoallergenic in terms of not being if does define it in the complaint according to the dictionary.com definition. And the law is clear. And Kelman, which was just discussed in the recent California Court of Appeal case in Salazar, say that where there are conflicting definitions, whether a reasonable consumer is likely to be misled cannot be decided on a motion to dismiss. And that is precisely the circumstance that we're facing here. The judge, the district court judge should not have arbitrarily decided that one definition was correct over another or was what a reasonable consumer would believe. Instead, he should have permitted the case to proceed to discovery to test. I want to talk very briefly about the pleading standard. It is a Rule 8 standard. And that standard is developed such that the plaintiff must give notice, reasonable notice, to the defendant and plausibly allege the facts of the complaint, which is done here. And also, the plausible facts should be accepted as true. This is not a motion for summary judgment determination. If you look at the judge's findings in the district court decision, many of those decisions, many of those sound bites actually read like a motion for summary judgment rather than a motion to dismiss at an initial pleading stage. With respect to the other hand sanitizer cases that were mentioned by Apelli, I just want to say very briefly that those are distinct. They all involved an asterisk on the front label of the product at issue. There's no such asterisk here. And the decisions around the country that she references where courts have dismissed early at an early pleading stage were based on the finding that the back label was qualifying with respect to the phrase many common and which is not found anywhere on the back label in this case. The same is true with respect to the recent decision of this court in McGinnity. That court actually expressly drew a distinction between the ambiguous claims at issue on the hair care products there and claims such as those involving 100% on the front label of a product, which it found under the standard in Ebner could be plausibly alleged to mislead a reasonable consumer at the pleading stage. The state amicus brief came up briefly and it should not be underestimated the importance of the Attorney General in providing a brief in support of California consumer protection law. The laws under which plaintiff asserts her complaint are designed to be protective of consumers of these products, not to be protective of judges or lawyers who might parse label statements, but rather to be protective of consumers who make quick purchasing decisions. And that is recognized in Bell. It's recognized in the First Circuit in Dumont. And it's recognized by the state courts of California. I just want to read very briefly from Bell v. Public Supermarkets, the Seventh Circuit decision that was endorsed by the Ninth Circuit in Moore v. Trader Joe's with respect to 100 Parmesan cheese. In that case, the court said, the district court's dismissal erred by departing from the Rule 12b6 standard and attributing to ordinary supermarket shoppers a mode of interpretation more familiar to judges trying to interpret statutes in the quiets of their chambers. Consumer protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguity, especially in the seconds usually spent picking a low-cost product. Plaintiff submits that the same is true in this case and that the district court's dismissal should be reversed. Thank you. All right. Thank you very much, counsel, for your helpful arguments. And traveling to court today, the case is submitted.
judges: NGUYEN, FORREST, Bennett